## MARY K. ANDERSON, ADMINISTRATRIX, RESPONDENT, v. THE DIRECTOR GENERAL OF RAILROADS, APPELLANT.

Argued March 3, 1920—Decided June 14, 1920.

1. Decedent was a conductor upon a freight train which was carrying articles of interstate commerce. When the train reached the freight yard his control over it ceased, but his work in connection with it was not terminated until he delivered certain train records to the yardmaster. He was killed while riding on another engine in going to the yardmaster's office. *Held*, that his duty with relation to the subject-matter of the transportation was not ended until he had turned over his records to the yardmaster; and the mere fact that he had left the train in the performance of that duty did not change the character of his employment.
2. The negligence of a fellow-servant does not constitute a defence to an action brought under the Federal Employers' Liability act.
3. A person who rides on the step of a locomotive engine assumes such risks as are incident to the ordinary operation thereof, but does not assume the risk of danger arising from causes *ab extra*.
4. The rules and regulations of a railroad company formulated for the government or control of their employes are only operative upon such of the employes as have received notice thereof, or those who are chargeable with knowledge of their existence.

---

On appeal from the Supreme Court.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *D. Trueman Stackhouse.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action is based upon the
Federal Employers' Liability statute. The plaintiff is the
widow of Harry Anderson, deceased, and she seeks by this suit
to recover the damages which she has sustained by reason of
the death of her husband, which occurred while in the service
of the defendant. The trial resulted in a verdict in her favor,
and from the judgment entered thereon the defendant appeals.

The first ground upon which a reversal is sought is, that
there was no proof in the case to support the conclusion that
plaintiff's decedent came to his death while employed by the
defendant in interstate commerce. The testimony showed
the following situation : The decedent was conductor upon a
freight train which was carrying articles of interstate com-
merce over the Camden and Atlantic railroad. When the
train reached the freight yard, in Camden, his control over it
ceased, but his work in connection with it was not terminated
until he had delivered certain train records, which he had
kept, to the yardmaster. For the purpose of performing his
duty he got down from his train and jumped upon the step of
a passing locomotive to save time in reaching the yardmaster's
office. As this engine was proceeding on its way the engine
of another train collided with it at a switch point with such
force as to throw it from the track. Anderson's death resulted
from the collision. Although it is conceded that Anderson
while in charge of the train was employed by the defendant in
interstate commerce, the contention is that he ceased to be
so employed as soon as he left it. But this suggestion is with-
out merit, for his duty with relation to the subject-matter of
the transportation was not ended until he had turned over his
records to the yardmaster; and the mere fact that he had left
the train in the performance of that duty did not at all change
the character of his employment.

Next, it is contended that in taking a position upon the
step of this engine Anderson placed himself in a position of
obvious danger, and that, therefore, he must be held to have
assumed all the risks of injury which the occupying of that
position carried with it, and that one of those risks was the

liability to injury which might result from the negligence of a
fellow-servant. In support of this contention, which, in effect,
is, that under the federal statute an employe assumes the risk
of injury arising out of the negligence of a fellow-employe,
counsel refers us to certain federal decisions, both in the
United States Supreme Court and in the Circuit Court of
Appeals, which he considers so hold. We think he mistakes
the purport of those decisions. By the first section of the
federal act a right of action is conferred by the injury or death
of the employe "resulting in whole or in part from the negli-
gence of any of the employes of the carrier." Although sec-
tion 4 of the act recognizes the common law doctrine of as-
sumed risks as still existent with certain expressed limitations
based upon statutory duties imposed upon the employer, and
although that doctrine included the proposition that an em-
ploye assumed the risk of injury resulting from the negligent
act of a fellow-servant, yet the federal statute, having ex-
pressly declared that an action will lie where the injury or
death of the employe has resulted from the negligence of a
fellow-servant, has also declared, by necessary implication,
that the negligence of a fellow-servant shall not constitute a
defence to such action. To hold, therefore, that an injury
resulting from the negligence of a fellow-servant is one of the
risks assumed by an employe, and that the carrier may set up
that assumption in bar of the action, would be, in legal effect,
to strike out the express provision of the act just recited.
We find nothing in the opinions to which we have been re-
ferred which justifies the assertion that such a construction
of the statute has been put upon it by the federal courts; and
in the absence of any judicial declaration to the contrary we
hold that the legislative purpose declared by the act is that
the danger of injury resulting from such negligence shall not
be considered to be a risk that has been assumed by the em-
ploye. In doing this we follow our earlier declaration in
*Stiedler* v. *Pennsylvania Railroad Co., ante p.* 197.

Turning to the narrower proposition, namely, that the step
of the engine upon which the decedent stood at the time of
the accident was a place of known danger, and that, therefore,

he assumed all the risks incident to that position, we content ourselves with repeating what was said by the Supreme Court in the case of *Brackney* v. *Public Service Corporation*, 77 *N. J. L.* 1, where the plaintiff had taken up his position on the front platform of a trolley car and was injured by a collision between it and a passing vehicle, "a person under such circumstances assumes such risks as are incident to the ordinary operation of the car, and not risk of danger arising from causes *ab extra*."

Lastly, it is argued that this judgment should be reversed because of the refusal of the trial judge to charge the following request: "Plaintiff's intestate, at the time of the accident, having been riding on the engine in violation of his employer's rules and regulations, and on a part of the engine he had no business to ride upon, the defendant owed him no duty but to abstain from willful and malicious negligence." We think this request was properly refused, for the legal proposition was based upon a fact which was assumed to have been conclusively proved, but which an examination of the testimony shows was in controversy. A witness was called on the part of the defendant who testified that he was familiar with the rules of the company concerning the riding of employes of trains on switch engines operating in the Camden yard, and that under them no one except the members of the engine crew was permitted to ride thereon without authority from the superintendent. When asked to refer to the specific rule, however, he produced rule 718. An inspection of that rule showed that it had been promulgated solely for the guidance of engineers, and provided that they "must not permit any person to ride on the engine without authority." There was nothing in the case to show that any rules or instructions had been furnished to conductors or other employes operating either on freight or passenger trains, forbidding their riding on switch engines, nor was there any attempt to bring home to the decedent knowledge of the existence of the rule appealed to. The rules and regulations of a railroad company formulated for the government or control of their employes are only operative upon such of the employes as have received

notice thereof, or those who are chargeable with knowledge of their existence; and whether or not this was the situation with relation to the decedent was, viewed in the most favorable light for the defendant, at least, a question of fact to be determined by the jury.

Finding no legal merit in the causes of reversal which have been argued, we conclude that the judgment under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, JJ.   8.

*For reversal*—MINTURN, WILLIAMS, GARDNER, JJ.   3.